IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AL-TARIQ R. RAMADAN,
        Plaintiff,

v.                                                            Civil Action No. 3:19-cv-166

RICHMOND REDEVELOPMENT AND
HOUSING AUTHORITY, et al.,
        Defendants.

## OPINION

Al-Tariq R. Ramadan, a senior citizen, lives in the Fay Towers housing complex managed by the Richmond Redevelopment and Housing Authority (the "Authority"). Ramadan has sued the Authority and six individual defendants, asserting that Fay Towers is an unsafe place to live, that the Authority has failed to maintain the premises, that he has suffered discrimination as a resident, and that the Authority wrongfully identified him as a class member in a different lawsuit. The defendants have moved to dismiss Ramadan's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the second amended complaint fails to state a claim for relief, the Court will dismiss this case with prejudice.

### I. FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

The factual allegations in Ramadan's second amended complaint fall into four general categories: (1) the lack of safety at Fay Towers; (2) the failure to maintain Fay Towers; (3) the alleged discrimination Ramadan has suffered as a resident; and (4) Ramadan's inclusion as a class member in a settled lawsuit against the Authority. The Court sets forth Ramadan's factual allegations in that order.[1]

---

[1] In the second amended complaint, Ramadan lists eighteen additional individuals as "[t]he other plaintiffs." (Dk. No. 6, ¶ 2.) He says that the "other [p]laintiffs are senior citizens who reside or

### A. *The Lack of Safety at Fay Towers*

On March 8, 2011, Ramadan's car was stolen from his parking space. Fay Towers management knew about the theft and sent maintenance to clean up the broken glass, but failed to tell Ramadan about it. Ramadan later watched footage of the theft on a security camera. Ramadan contends that the theft "demonstrates inadequate security and inadequate protection." (Dk. No. 6, ¶ 6.) On a later date, the Authority "posted" that it could no longer pay for the security of Fay Towers. (*Id.* ¶ 20.) Since the Authority eliminated security, residents have experienced "deaths, robberies, break-ins, thefts, threats, and bodily injuries." (*Id.* ¶ 12.) After the Authority eliminated security, management discontinued the free clinic services offered through Virginia Commonwealth University. (*Id.* ¶ 15.)

### B. *The Failure to Maintain Fay Towers*

Ramadan recounts various incidents regarding the Authority's alleged failure to maintain Fay Towers. First, Ramadan alleges that officials instructed residents "to preserve water for showers, drinking, [and] cooking" because the water pipes needed repairing or replacing. (*Id.* ¶ 7.) During the twelve years that Ramadan has lived at Fay Towers, he has noticed "constant, faulty water piping." (*Id.*) In January, 2018, the Authority's Executive Director T.K. Somanath resigned allegedly due to the issues with the piping.

---

resided" in Fay Towers. (*Id.* ¶ 7.) The Court, however, has only afforded Ramadan the ability to proceed *in forma pauperis*. (*See* Dk. No. 1.) Ramadan may not litigate this case on behalf of other individuals. *See Guggenheimer Health & Rehab. Ctr. v. Cary*, No. 6:17-cv-79, 2018 WL 1830736, at *2 (W.D. Va. Apr. 17, 2018) ("The default rule in federal court is that one may litigate only his own rights and interests, not those of others."). To the extent that Ramadan seeks to maintain a class action on behalf of the other individuals, courts in the Fourth Circuit "do[ ] not certify a class where a pro se litigant will act as representative of that class." *Fowler v. Lee*, 18 F. App'x 164, 165 (4th Cir. 2001). Thus, Ramadan remains the sole plaintiff in this case, and the Court will only consider whether Ramadan—not the eighteen other individuals listed in the second amended complaint—has stated a claim for relief.

Second, the tenant who lives in the apartment on the floor above Ramadan caused flooding in Ramadan's apartment. The flooding "damaged Ramadan's clothes, furniture, carpet, and shut down the elevator system." (*Id.* ¶ 8.) Despite the damage the tenant caused, the tenant remains a resident of Fay Towers.

Third, multiple power outages have plagued the residents of Fay Towers "for three and four days on end." (*Id.* ¶ 9.) Management did not offer any compensation for spoiled refrigerated food.

Fourth, roof leaks resulted in "standing water in [t]he apartments." (*Id.* ¶ 10.) Nobody fixed the leaks "for at least a month." (*Id.*)

Fifth, when a recent earthquake caused structural damage to Fay Towers, the Richmond Fire Department evacuated residents to a nearby facility. Although the residents returned the following day, "[n]othing was done to make the damaged structure safe for the residents prior to their return." (*Id.* ¶ 11.) Shortly thereafter, the Authority announced "a downsizing, relocation, and rebuilding of Fay Towers." (*Id.* ¶ 12.) As part of that effort, the Authority relocated certain residents from Fay Towers, leaving multiple areas vacant and open to squatters.

Finally, management allowed maintenance staff "to bolt shut" Ramadan's windows on the fifth floor of the building. (*Id.* ¶ 21.) The lack of air flow "caus[ed] hospitalization from the flu." (*Id.*) Additionally, maintenance staff waited two weeks to fix a "molded" shower drain. (*Id.*)

### C. Religious Discrimination

Ramadan asserts that Fay Towers officials "dismantled" his Islamic interfaith services. He says that residents cannot "say, print, or post the names" of the Bible, Quran, or Torah, but must refer to those texts as "'book' studies." (*Id.* ¶ 13.) Ramadan had previously received "a Certificate of Merit" for his interfaith services. (*Id.*)

Shortly after Ramadan began living at Fay Towers, the activity coordinator, Ms. Banks-Lewis, "expressed a stereotypical[ ] view" of Islam by characterizing Ramadan's view of women as "sexist." (*Id.* ¶ 14.) Ramadan explained that his faith requires him to "extol and protect women." (*Id.*)

On a different date, a resident threatened Ramadan and told him to end his interfaith services. The property manager, Ms. Hicks, witnessed the threat. The resident who threatened Ramadan "had a previous knife assault charge in the same elevator/lobby area." (*Id.* ¶ 16.) In response, Hicks "posted a warning, and a pamphlet stating . . . to '[l]ook out for each other.'" (*Id.*) Considering the lack of security, "[m]anagement left seniors to fend for themselves." (*Id.*)

### D. Ramadan's Inclusion as a Class Member in a Settled Lawsuit Against the Authority

Ramadan's final series of allegations concern his inclusion as a class member in a different case against the Authority. *See Miles v. Richmond Redevelopment & Hous. Auth.*, No. 3:17-cv-160 (E.D. Va. July 10, 2018).[2] On July 10, 2018, the Court approved the settlement agreement in *Miles* and certified the following settlement class: "[a]ll current and former Richmond public housing residents since November 1, 2012, through October 31, 2016, who were subject to the [Authority's] procedures regarding utility allowances and late fees." (No. 3:17-cv-160, Dk. No. 43, at 1-2.) The Legal Aid Justice Center (the "Center"), which represented the plaintiffs in *Miles*, identified Ramadan as a class member. (Dk. No. 6, ¶ 18.)

Ramadan alleges that the Center wrongfully included him as a class member in *Miles*. He says that he received a reimbursement for utility bill charges, which "was part of a settlement for

---

[2] "A court may take judicial notice of docket entries, pleadings[,] and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, Civil No. PJM 14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015). Thus, the Court will take judicial notice of the documents filed in the *Miles* case.

4

people living in a different RRHA building." (*Id.* ¶ 17.) After the *Miles* settlement, Ramadan had to pay a "connection charge" because he had a lack of "history" of electric bills. (*Id.*) He alleges that he would not have had to pay the connection charge if the Authority "had not included him in the other building's settlement." (*Id.*) Ramadan later approached staff members at the Center for representation in this lawsuit, but the Center declined to represent him. (*Id.* ¶ 19.)

Ramadan seeks two million dollars in damages "due to gross negligence, mismanagement, cruel and unusual punishment, horrific stress, and mental anguish." (*Id.* at 7.)

## II. LEGAL STANDARD

The defendants[3] have moved to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must

---

[3] Of the seven defendants listed in the second amended complaint, two defendants—the Authority and Sylvia Jones—moved to dismiss. One defendant, Mable Mudd, filed a pro se document entitled "Answer to Complaint." (Dk. No. 14, at 1.) Four defendants—Adrienne E. Goolsby, M. Hicks, Valerie Hartley, and Carol Jones-Gilbert—have not responded to the second amended complaint or otherwise appeared in this case. Because Ramadan proceeds *in forma pauperis*, however, the Court has the authority to dismiss this case "at any time" if the Court concludes that Ramadan "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *see also De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) ("The standards for reviewing a dismissal under § 1915(e)(2)(B)(ii) are the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6)."). In light of the procedural posture of this case, the Court will consider whether Ramadan states a claim for relief as to all defendants.

[4] Ramadan did not respond to the motion to dismiss. Instead, Ramadan filed a "motion to hear," in which he asks the Court "to hear these asserted . . . complaints." (Dk. No. 21, at 1.) Ramadan attached various annotated letters and notices as exhibits to the "motion to hear." (*See* Dk. No. 23-2.) When the Court ordered Ramadan to file a second amended complaint, the Court explained that he "may not refer to or rely on any previous pleadings or filings in this case" and that "the second amended complaint will become the operative complaint in this case." (Dk. No. 5, at 2.) Thus, to the extent that Ramadan seeks to amend or supplement his second amended complaint, he cannot do so through exhibits attached to a "motion to hear." *See* Fed. R. Civ. P. 15(a). Moreover, as the Court explains below, any amendment would be futile.

5

accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When the plaintiff appears pro se, as Ramadan does here, courts do not expect the pro se plaintiff to frame legal issues with the clarity and precision expected from lawyers. Accordingly, courts construe pro se complaints liberally. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This principle of liberal construction, however, has its limits. *Id.* Courts do not need to discern the unexpressed intent of the plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

### III. DISCUSSION

Applying the principles of liberal construction,[5] Ramadan's second amended complaint raises the following claims: violation of the Equal Protection Clause of the Fourteenth Amendment

---

[5] When the Court granted Ramadan's motion for leave to proceed *in forma pauperis*, the Court explained that Ramadan's initial complaint was "beyond comprehension and the Court [could not] discern the claims within it." (Dk. No. 2, at 1.) The Court, therefore, ordered Ramadan to file an amended complaint. Because Ramadan's amended complaint did not include separate sections identifying each legal claim, the Court again ordered Ramadan to amend his pleading. The Court

6

pursuant to 42 U.S.C. § 1983 (Count One); religious discrimination in violation of the Fair Housing Act ("FHA") (Count Two); religious discrimination in violation of the Housing and Community Development Act ("HCDA") (Count Three); and legal malpractice (Count Four).[6]

## A. Count One: Equal Protection Claim

In Count One, Ramadan appears to assert an equal protection claim based on age and religion pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action against anyone "who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . [the] citizen . . . to deprivation of any rights, privileges or immunities under the Constitution and laws." 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege that the defendant acted under the color of state law and deprived the plaintiff of a right secured by the Constitution. *Brown v. Transurban USA Inc.*, 144 F. Supp. 3d 809, 833-34 (E.D. Va. 2015).

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the [E]qual [P]rotection [C]lause . . . is to secure every person

---

directed him to include "separately titled sections clearly identifying each legal claim and the basis under federal or state law for that claim." (Dk. No. 5, at 1.) Although Ramadan's second amended complaint partially complies with the Court's directives, the section containing Ramadan's legal claims is not a model of clarity. Moreover, Ramadan does not identify which defendants he believes are liable with respect to each legal claim and does not connect most of his factual allegations to his legal claims. Nonetheless, applying the principles of liberal construction, the Court can sufficiently discern the nature of Ramadan's legal claims to determine whether his factual allegations give rise to any actionable claim for relief.

[6] In his jurisdictional statement, Ramadan cites various provisions of the Administrative Procedures Act ("APA"). Ramadan, however, does not identify any legal claim under the APA. Nor does he connect any of his factual allegations to a claim under the APA. Accordingly, to the extent that Ramadan intends to seek relief under the APA, the second amended complaint fails to state a claim for relief.

within the State's jurisdiction against intentional and arbitrary discrimination." *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) (alterations in original) (internal quotation marks omitted). "To succeed on an equal protection claim, a plaintiff must first demonstrate [1] that he has been treated differently from others with whom he is similarly situated and [2] that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "The plaintiff must plead sufficient facts to satisfy each of these requirements in order to state a cognizable equal protection claim." *Martin v. Duffy*, 858 F.3d 239, 252 (4th Cir. 2017).

First, Ramadan fails to allege that he has received different treatment as a senior citizen resident from all other residents of Fay Towers. Ramadan contends that the Authority has failed to protect its senior citizen residents by neglecting to maintain the safety and upkeep of Fay Towers. Ramadan, however, does not assert that those alleged failings apply only to senior citizen residents. Instead, Ramadan describes the safety and maintenance issues as global problems plaguing all residents of Fay Towers. *Cf. Waters v. Bass*, 304 F. Supp. 2d 802, 810 (E.D. Va. 2004) (holding that the plaintiff failed to state an equal protection claim when he "concede[d] in his pleading that all state inmates" had to pay a daily fee). Ramadan, therefore, fails to state an age-based equal protection claim.

Second, Ramadan fails to plead that he has received different treatment as a Muslim resident. Ramadan alleges that Fay Towers officials "dismantled" his Islamic interfaith services by requiring residents to refer to the Bible, Quran, or Torah as "'book' studies." (Dk. No. 6, ¶ 13.) In other words, Ramadan asserts that Christian, Muslim, *and* Jewish resident must refer to their religious texts as "'book' studies." (*Id.*) Ramadan, therefore, does not allege that officials treated

8

Muslim residents any differently from residents of other faiths. Accordingly, Ramadan fails to state a religion-based equal protection claim.[7]

Moreover, Ramadan does not allege facts showing that anti-Muslim animus motivated the decision to "dismantle" his interfaith services. (*Id.*) Aside from the bare allegation that an activity coordinator "expressed a stereotypical[ ] view" of Islam by characterizing Ramadan's view of women as "sexist," (*id.* ¶ 14), Ramadan pleads no facts "plausibly identifying any discriminatory intent on the part of the ... decision makers." *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011). Nor does he connect any alleged discriminatory animus to the "dismantling" of his interfaith services. Because Ramadan "has failed to make sufficient allegations with respect to either element," *id.*, the Court will dismiss his equal protection claim.[8]

---

[7] Even if Ramadan could state an age- or religion-based equal protection claim, the statute of limitations would bar that claim to the extent that it relies on events that took place more than two years before he filed his complaint. "Because no explicit statute of limitations for 42 U.S.C. § 1983 actions exists, federal courts borrow the personal injury statute of limitations from the relevant state." *Prasad v. Delta Sigma Theta Sorority, Inc.*, No. 3:16-cv-897, 2017 WL 4399551, at *3 (E.D. Va. Oct. 3, 2017). "Virginia applies a two-year statute of limitations to personal injury claims." *Id.* (citing Va. Code Ann. § 8.01-243(A)). Because Ramadan did not include the dates on which many of the events in the second amended complaint took place, the Authority filed a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). (Dk. No. 19.) Given the Court's conclusion that none of Ramadan's allegations give rise to an actionable claim, the Court will deny the motion for a more definite statement as moot.

[8] Ramadan's equal protection claim also fails because he does not allege any facts to support a plausible cause of action against the Authority under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). Because the Authority qualifies as a "municipality" under Virginia law, *see Va. Elec. & Power Co. v. Hampton Redevelopment & Housing Auth.*, 217 Va. 30, 225 S.E.2d 364, 367-68 (1976), Ramadan must demonstrate that the Authority itself caused the deprivation of his rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011). Specifically, Ramadan must plead facts showing that (1) he suffered a deprivation of his federal rights, and (2) the execution of the Authority's "policy or custom" inflicted the injury. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Ramadan does not plead any facts showing that the Authority deprived him of his rights pursuant to any "policy or custom" under *Monell*. *See id.*

## B. Count Two: Fair Housing Act Claim

In Count Two, Ramadan argues that he has suffered discrimination in violation of the Fair Housing Act ("FHA"). *See* 42 U.S.C. § 3617.[9] To state a claim under § 3617, Ramadan must plead facts showing (1) that he is "a protected individual under the FHA;" (2) that he was "engaged in the exercise or enjoyment of fair housing rights;" (3) that the Authority was "motivated in part by an intent to discriminate;" and (4) that the Authority "coerced, threatened, intimidated, or interfered with [him] on account of [his] protected activity" under the FHA. *Frazier v. Cooke*, No. 4:17-cv-54, 2017 WL 5560864, at *4 (E.D. Va. Nov. 17, 2017).

"There are two theories of discrimination cognizable under the [FHA]: disparate treatment (or intentional discrimination) and disparate impact." *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 630-31 (D. Md. 2019) (quoting *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2525 (2015)). "[T]o plead disparate treatment, a plaintiff must raise plausible factual allegations of a discriminatory intent or motive." *Id.* at 631 n.8. A plaintiff must plead "'more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts,' and . . . must show 'that [religious] discrimination was the [defendant]'s standard operating procedure—the regular rather than the unusual practice.'" *Id.* (second alteration in original) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).

As the Court explained above, Ramadan does not raise allegations of discriminatory intent. *See Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 348 F. Supp. 3d 398, 417 (D. Md. 2005) (holding that "intent" under the FHA "is defined consistently with the definition used in Equal

---

[9] Although Ramadan does not identify a specific provision of the FHA, he appears to invoke § 3617. That section provides, "[i]t shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of . . . any right granted under or protected by §§ 3603, 3604, 3605 or 3606 of this Title." 42 U.S.C. § 3617.

10

Protection Cases").[10] Because Ramadan fails to plead facts showing an intent to discriminate, the Court will dismiss his FHA claim.

### C. Count Three: Housing and Community Development Act Claim

In Count Three, Ramadan asserts that he has suffered discrimination in violation of the Housing and Community Development Act ("HCDA"). *See* 42 U.S.C. § 5309.[11] "While 42 U.S.C. § 5309 provides that individuals cannot be denied participation in a program authorized by the Housing and Community Development Act on the basis of unlawful discrimination, the statute does not confer a private cause of action." *Hill v. City of Suffolk*, No. 2:10-cv-430, 2010 WL 11530490, at *2 (E.D. Va. Dec. 1, 2010). "[S]ection 5309 provides for administrative enforcement of the anti-discrimination provisions by the Secretary of Housing and Urban Development, and for judicial enforcement through a civil action by the Attorney General, suggesting Congress intended to place enforcement in the hands of the Secretary, rather than private parties." *Freeman v. Fahey*, 374 F.3d 663, 665 (8th Cir. 2004). Because Ramadan is a private party, he cannot assert a claim under § 5309. The Court, therefore, will dismiss Ramadan's claim under the HCDA.[12]

---

[10] Ramadan also fails to plead facts supporting a disparate impact theory of discrimination. To proceed on a disparate impact claim, "the plaintiff must demonstrate a robust causal connection between the [defendant's] challenged policy and the disparate impact of the protected class." *Reyes v. Waples Mobile Home Park Limited P'ship*, 903 F.3d 415, 424 (4th Cir. 2018). Because Ramadan does not identify any "policy" with a discriminatory effect, *id.*, he cannot invoke the disparate impact theory of discrimination. *See Inclusive Cmtys. Project, Inc.*, 135 S. Ct. at 2523.

[11] Ramadan does not identify a specific provision of the HCDA, but he appears to assert a claim under § 5309. That section provides, "[n]o person in the United States shall on the ground of race, color, national origin, religion, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity funded in whole or in part with funds made available under this chapter." 42 U.S.C. § 5309(a).

[12] Even if § 5309 confers a private right of action, Ramadan fails to state a claim because he "does not allege that any of the defendants receive any funding under the HCDA." *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 782 (E.D. Va. 2002).

## D. Count Four: Legal Malpractice

In Count Four, Ramadan alleges that the Center wrongfully identified him as a class member as part of the *Miles* settlement, which the Court construes as a claim for legal malpractice. "To state a cause of action for legal malpractice under Virginia law, [a] plaintiff must show (1) the existence of an attorney-client relationship giving rise to a duty; (2) the breach of that duty by the attorney; and (3) damages proximately caused by the breach." *Jones v. Link*, 493 F. Supp. 2d 765, 771 (E.D. Va. 2007).

Ramadan does not allege that an attorney-client relationship existed when the Center included him as a class member in *Miles* or when the Center declined to represent him in this case. Regarding Ramadan's allegation that the Center wrongfully identified him as a class member in *Miles*, "[a] client-lawyer relationship with a potential member of [a] class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired." *ABA Comm'n on Ethics & Prof'l Responsibility*, Formal Op. 07-445 (2007) (interpreting Model Rules of Professional Conduct 4.2, 4.3, and 7.3); *accord Kay Co., LLC v. Equitable Prod. Co.*, 246 F.R.D. 260, 264 (S.D. W. Va. 2007) (describing Formal Opinion 07-445 as "the majority rule that prior to class certification there is no lawyer-client relationship between the plaintiff's counsel and the putative class members"). Ramadan, therefore, has not shown that an attorney-client relationship existed when the Center identified him as a class member.[13]

Nor has Ramadan shown that an attorney-client relationship existed when the Center declined to represent him in this case. In Virginia, "[i]t is the contract formed between an attorney

---

[13] Moreover, Ramadan does not show any breach or damages flowing from a breach with respect to the *Miles* settlement. When the Court approved the settlement in *Miles*, the Court found that class counsel "adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A); (3:17-cv-160, Dk. No. 43). Further, the Center points out that Ramadan did not opt out of the class or object to the terms of the settlement. *See* Fed. R. Civ. P. 23(e)(5).

and a client that gives rise to the attorney-client relationship; but for the contract, the attorney owes no duty to the client." *Johnson v. Hart*, 279 Va. 617, 692 S.E.2d 239, 243 (2010). Because Ramadan alleges that the Center declined to represent him in this case, he fails to plead that any contract existed regarding legal representation. Accordingly, the Court will dismiss Ramadan's legal malpractice claim against the Center.[14]

### E. Futility of Amendment

Federal Rule of Civil Procedure 15 directs courts to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts deny leave to amend if (1) amendment would prejudice the opposing party, (2) there has been bad faith, or (3) amendment would be futile. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012).

In this case, the Court has afforded Ramadan two opportunities to state an actionable claim for relief and to comply with the Federal Rules of Civil Procedure. Despite those opportunities, Ramadan's third effort at drafting an appropriate pleading continues to fall far short. *See Field v. GMAC LLC*, 660 F. Supp. 2d 679, 690 (E.D. Va. 2008) ("[A]n amendment may be considered futile where [a plaintiff] ha[s] previously had two full opportunities to plead [his] claim."). Because any amendment would be futile, the Court declines to grant Ramadan leave to amend.

---

[14] Ramadan identified "false accusation" as a legal claim, apparently based on his assertion that the Center wrongfully identified him as a class member in *Miles*. To the extent that Ramadan intends to assert a claim for defamation, his allegations do not give rise to such a claim. "To state a claim for defamation under Virginia law, a plaintiff must plead three elements: (1) publication of (2) an actionable statement with (3) the requisite intent." *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018) (internal quotation marks omitted). "To be actionable, a statement must be both false and defamatory." *Id.* (internal quotation marks omitted). Ramadan does not plead that the Center published his participation in the settlement or that his inclusion as a class member was false or defamatory. Accordingly, Ramadan fails to state a claim for defamation.

## IV. CONCLUSION

*B*ecause Ramadan fails to state a claim for relief, the Court will dismiss this case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to all pro se parties.

Date: 17 January 2020  
Richmond, VA

/s/  
John A. Gibney, Jr.  
United States District Judge